Leo R. & Eloise M. Marshall v. Commissioner.
Marshall v. Commissioner
Docket No. 16135.
United States Tax Court
1949 Tax Ct. Memo LEXIS 167; 8 T.C.M. (CCH) 508; T.C.M. (RIA) 49128; June 1, 1949
The petitioners appeared pro se. L. C. Aaron, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: This case involves income taxes for the calendar year 1944. Deficiency was determined in the amount of $257.05 and negligence penalty of $12.85. The only question for our consideration is the deductibility of various items deducted by the petitioners in their return, for contributions, interest, taxes, losses, medical expenses, and "miscellaneous." From the evidence adduced we make the following Findings of Fact The petitioners are husband and wife, residing at Long Beach, California. They filed a joint return for the year 1944. They paid personal property tax in the amount of $1.73. They paid interest on a loan from Bank *168 of America, on which on December 7, 1943, there was a balance of $183.50. Payments on the loan during 1944 were made as follows: Five payments of $26.25 each, one payment of $25.75, and one payment of $26.50, the last payment being on June 29, 1944. On September 30, 1944, they executed their note to Bank of America in the amount of $265, payable in eleven installments of $23 each beginning December 10, 1944, with interest at the rateof one per cent a month. The note is stamped paid September 14, 1945. On June 12, 1944, they executed as joint tenants a contract with Griffith & Legg, Inc., a corporation, the contract in pertinent part providing that Griffith & Legg sell and that petitioners buy certain real estate therein described for $4,800, $304.21 being paid and $3,700 evidenced by a promissory note and deed of trust providing for 35 installments, two installments of $47.67 each commencing on July 1, 1944, one installment of $247.67 on September 1, 1944, 31 monthly installments of $47.67 each commencing October 1, 1944, and one installment of $33.17 on the first of the 35th month. The payments are not divided between principal and interest. The above installments were to be applied *169 to the unpaid balance on the property. The contract does not indicate the rate of interest, except that 7 per cent interest should be paid upon any taxes, assessments, or charges which the seller might pay for the petitioners. "Escrow Instructions" date August 30, 1944, with reference to the purchase of the above real estate, recite the payment of interest at the rate of 6 per cent per annum. Payments upon said indebtedness for the real estate were made as follows: On February 28, 1944, $150; March 18, 1944, $110; April 1, 1944, $47.67; May 2, 1944, $47.67; June 1, 1944, $47.67; June 26, 1944, $47.67. During 1944 the petitioners paid one Sechrist, physician, $136.50 and paid a dentist $11. During the year 1944 Eloise M. Marshall was a Sunday School teacher and she and their small daughter attended church. Contributions were made to the church estimated at $52 and clothing was given to the Salvation Army. During that year Leo R. Marshall was a machinist in a shipyard. Some of his clothes were burned at the shipyard and he lost small tools (which he was required to furnish) by theft; also a pint of Bourbon; $10 disappeared from their home; and a window in their car was broken. Leo *170 R. Marshall's glasses were broken by accident while he was working. He was not required but was advised to have and did wear steel-toed shoes because of working in oil. The shoes cost about $8 or $10 a pair and they lasted about three or four months. He spent about $78 for laundering of his work clothes which were soiled because of his constantly working in dirty oil from the ships. He paid $3 a week for his transportation to and from work and figured that $2 a week was "excessive and deductible." While at work he was in charge of a crew and it was necessary for him at times to use a pay telephone in connection with sending for trucks or going after supplies. He paid union dues of $50. Petitioners sold their residence in which they lived during all of the time of their ownership. Petitioners paid sales tax on different purchases throughout the year. Leo. R. Marshall estimated this at $70 but did not think it was correct. Under date of March 10, 1947, petitioners filed a verified protest with the collector of internal revenue at Los Angeles in which they stated, in pertinent part, "We are covered with receipts and records." The joint return filed by the petitioners for the year *171 1944 lists total income of $3,460.84. It claims a loss of $35.05 upon the purchase and sale of real estate with a total contract price of $5,221. Opinion This case was tried by the petitioners themselves, that is, no one appeared for them, except that Leo R. Marshall represented himself and wife and testified. We have above set forth, all of the evidence adduced to substantiate the deductions claimed. Upon consideration of all of the evidence offered, and taking into consideration Cohan v. Commissioner, 39 Fed. (2d) 540, we approve the allowance of contributions in the amount of $62. There is almost no evidence to indicate how much interest was actually paid during the year, but estimating the matter as best we can we approve the allowance of $139.20 interest paid, being $11 on $183.50 note, $7.95 on $265 note and $120.25 on $3,700 debt. Taxes were actually proven to be paid only in the amount of $1.73, but although the petitioners admitted that their estimate of $70 sales tax was not correct, again we make an allowance under the Cohan case and approve deduction of a sales taxes of $35. No loss whatever can be allowed upon the sale of real estate since the evidence *172 shows that it was personal residence of the petitioners. As to deductible expenses, though there is no satisfactory evidence we approve a deduction of $25 for special work shoes, and $78 for cost of laundering work clothes. We think the evidence is sufficient to indicate that these matters were reasonably required in the work of the petitioner Leo R. Marshall, and not adaptable to ordinary wear. Nothing can be allowed for "excessive transportation charges," as these appear on the face of the evidence to be merely expenses of going to and from daily work. Medical expenses were proven to be paid in the amount of $147.50, but since this is less than 5 per cent of the gross income reported by the petitioners no amount remains for deduction, under section 23 (x) of the Internal Revenue Code. The petitioners had some losses, of small tools, $10 which disappeared from the home, clothes burned, and glasses broken; also a pint of Bourbon stolen, but no proof at all was made of the value of these items except an estimate of $60 for the clothing burned. Moreover, it is obvious that the amounts claimed can not be allowed for the reason that there is no proof, under section 23 (e) of the Internal Revenue Code *173 that the losses were "not compensated for by insurance or otherwise," in addition to which the loss $10of is not shown to be theft. We allow $6 as one-half of the amount paid for telephone, since there is no proof that it was exclusively used for business purposes. We can not reasonably make further allowances. The only witness, Leo. R. Marshall, agreed that estimates were used and, in one case, as to sales tax, thought that this estimate was too high. Nothing was produced in the way of documentary evidence except with reference to the loan upon the home and the note for $265 and the bank loan of $183.50, in addition to the two receipts for doctor bills; this although as late as March 10, 1947, they had under oath stated in their protest "We are covered with receipts and records." Such evidence is not reasonably sufficient to overcome the presumption of correctness of the deficiency determined, except as above allowed. Though the Commission in the deficiency notice added $12.85 for the 5 per cent negligence penalty, we are not convinced in this case that it should be applied. It is, therefore, denied. Decision will be entered under Rule 50.